## Case No. 4,843.

FITZPATRICK et al. v. EIGHT HUNDRED BALES OF COTTON.

[3 Ben. 42.][1]

District Court, S. D. New York. Dec., 1868.[2]

[1] [Reported by Robert D. Benedict, Esq., and here reprinted by permission.]
[2] [Affirmed in Case No. 4,319.]

E. H. Owen, for libellants.
C. A. Hand, for claimants.

BLATCHFORD, District Judge. It is the law of this court, as settled by the supreme court of the United States (Columbian Ins. Co. v. Ashby, 13 Pet. [38 U. S.] 331), that the voluntary running on shore of a vessel in a case of such imminent peril that there is no other possible means of preserving the crew, the vessel and the cargo, the stranding being done to preserve the crew, the vessel, and the cargo, followed by a total loss of the vessel and the saving of the cargo, constitutes, on behalf of the vessel, a general average loss, to which the cargo saved is bound to contribute. In the case of Barnard v. Adams, 10 How. [51 U. S.] 270. 303, the same court state the rule to be, that, where there is a danger in which vessel, cargo, and crew participate, and such danger is imminent and apparently inevitable, except by voluntarily incurring the loss of a portion of the whole to save the remainder, and there is a voluntary jettison of some portion of the whole, for the purpose of avoiding such imminent peril, and the attempt to avoid such imminent common peril is successful, the case is one for a general average contribution. It was urged, in the present case, on the part of the claimants, that, to constitute a voluntary stranding, the vessel must be subjected intentionally to an increased peril, and that, where she flees from instant and sure destruction, the election to strand her is a secondary result forced by unavoidable com-

pulsion, and is not voluntary. This is a mistaken view of the law of the federal courts on the subject. In Columbian Ins. Co. v. Ashby [supra], it is held, that where, in the stranding, there is an intention to place the vessel and cargo, if practicable, in less peril, by an act which, though hazardous, is done to escape from a more pressing danger, and for the common safety, and the salvation of the cargo is accomplished thereby, while the vessel is lost, the case is one of voluntary stranding, in which the cargo must contribute, in general average, for the loss of the vessel. So, too, in Barnard v. Adams [supra], it is held, that where there is imminent peril that the vessel will be driven on shore under such circumstances as to be inevitably wrecked, with loss of vessel, cargo, and crew, and such immediate peril is avoided by voluntarily stranding the vessel at a less dangerous place, and cargo and crew are saved uninjured, but the vessel is lost, the case is one of voluntary stranding, and one for contribution, in general average, by the cargo saved, to the loss of the vessel. In that case, it was urged, that if the common peril was of such a nature that the thing cast away to save the rest would have perished inevitably, even if it had not been selected to suffer in place of the whole, there could be no contribution. But the court overruled this view, and held that there could be no foundation for a voluntary stranding, except the compulsion of necessity to save vessel and cargo or one of them from an imminent peril which threatened their common destruction; that the compulsory choice between the loss of the whole and the loss of a part must exist, to justify the sacrifice of a part for the whole; and that, if the jactus were not indispensable in order to escape the common peril, the master would himself be liable for the consequent loss. In the case of Rea v. Cutler [Case No. 11,599], the doctrine of the case of Columbian Ins. Co. v. Ashby was applied, and it was held that, where the master adopted a course which seemed to him least perilous, and most conducive to the common benefit, the loss by shipwreck being inevitable, but being capable of being met in more than one way, and with different degrees of peril to life or property, and in so acting the vessel was wrecked, the loss was a ground for general average.

Applying these principles to the facts of the present case, the stranding of the vessel was less perilous than an effort to keep her head to the wind, and to keep her away from the shore. Such an effort, on the evidence, would have caused her to go around no farther than into the trough of the sea, and there was in such a position imminent and apparently inevitable danger that her crew would have been swept away and lost, entailing a loss of vessel and cargo. Under these circumstances, the master adopted the course which was least perilous. He knew that the New Jersey shore was sandy, and afforded a probability of safety, and, after due and proper consultation, he directed the course of his vessel so as to give her and her cargo the benefit of the lesser peril and the chance of avoiding the greater one. There was, of course, a chance that, in not running before the wind, and in keeping off shore, the vessel might in some way have escaped the apparent danger from lying in the trough of the sea, but that chance the master threw away and elected not to take; and in doing so he exercised volition. There was a manifest intention on the part of the master, especially after the second consultation, to place the vessel and cargo in less peril by running the vessel on shore. That act, though hazardous, was done to escape from the more pressing danger, and was for the common safety. It is true that, when the master first began to run before the wind, the New Jersey shore was so far distant that his hope that the wind would die away or change before he should reach the shore was greater than his fear of being cast upon the shore. But, at the time of the second consultation, there was an honest belief that the vessel and cargo and crew would be lost in the trough of the sea, if the vessel were not run on shore, and that there was less peril in running her on shore. Under this state of facts, the will of the master was exercised in avoiding the greater peril of lying in the trough of the sea, and in discarding whatever chance of safety existed in doing so, and in carefully guiding the course of the vessel so as to accomplish the result attained. The case, therefore, was one of voluntary stranding, calling for contribution, in general average, on the part of the cargo saved.

The defence that the vessel was not seaworthy when she left New Orleans is not made out. She was equipped in a manner which rendered her competent to encounter the ordinary perils of the voyage. Dupont v. Vance, 19 How. [60 U. S.] 162, 167; 2 Pars. Mar. Law, bk. 2, c. 3. § 2, p. 132. The fact that the mizzen sail gave out in the extraordinary storm the vessel encountered, and that she had no spare mizzen sail, is not enough to make out unseaworthiness at the commencement of the voyage. I see no evidence of any deficiency in her equipment in other respects, or of any want of care or skill in her navigation. The master appears to have been a competent man, and to have acted in the emergency with due deliberation and discretion, with no unreasonable timidity, with an honest intent to do his duty, and with a fair exercise of skill. Lawrence v. Minturn, 17 How. [58 U. S.] 100, 110. The freight, if lost, is to be regarded as a part of the loss to be contributed for. Columbian Ins. Co. v. Ashby, 13 Pet. [38 U. S.] 331, 344.

There must be a decree for the libellants

in accordance with this decision, with a reference to a commissioner, as an auditor, to adjust, and state, and report the average contribution due from the cargo saved. All other questions are reserved until the coming in of the report.